[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves an intersection accident at Knapps Highway and Knapps Park Drive in Fairfield, Connecticut. A collision occurred somewhere in the intersection between a vehicle, described only as a truck, operated by defendant and a bicycle operated by plaintiff. There was a paucity of evidence as to what actually occurred, and there were apparently no witnesses other than the defendant Kane, who was operating the truck, and plaintiff.
Plaintiff testified that all he could remember was that he was riding around on a bicycle and woke up in the hospital. Defendant testified by way of a deposition. The transcript is plaintiff's exhibit H and the video tape of that deposition is plaintiff's exhibit I.
Defendant Kane's direct testimony can be summarized as follows. The accident occurred at about 10:30 on a Sunday night as he was returning from a friend's house. He was taking a left hand turn to go up Knapps Park Drive when the plaintiff came out of nowhere from the wrong side of the road on Knapps Park Drive and struck his vehicle head-on. It happened so fast that there was no way to avoid it. Plaintiff had a stop sign at the bottom of the hill and, although defendant Kane did not see defendant before the impact, plaintiff must have gone through the stop sign because of the "forceness" of the impact.
On cross-examination, plaintiff's inquiries as to the details of the accident were limited to a question as to whether defendant Kane saw plaintiff before the accident (he did not) and a question as to defendant Kane's speed when he approached the intersection (five to eight miles per hour). The rest of the cross-examination established that defendant Kane had once been prescribed eyeglasses for his work and was not wearing them at the time of the accident. Further, he had not worn such glasses for six or seven years, and they were to correct a very mild condition. The cross-examination also established that at CT Page 6925 some point in the past defendant Kane had been issued a traffic ticket or tickets. He did not recall the specifics as they were long ago, and he might have had one that was a speeding ticket.
Plaintiff seeks to establish liability by inference. Plaintiff testified that he was in the habit of stopping at this particular intersection, especially as trees blocked the line of vision to the right of the stop sign. He asks the court to infer that because of that habit he must have stopped at the stop sign on the evening in question. Plaintiff testified that he and his friends all smoked. From this evidence, he asks the court to infer that he must have been on his way to the store to buy cigarettes at the time of the accident. Going to the store would have necessitated his making a right turn at the intersection; therefore, he asks the court to infer that he was attempting to make a right turn at the time of the collision.
A trier may draw logical and reasonable inferences from facts found. The evidence here does not support the inferences plaintiff asks the court to draw, and the court declines to draw those inferences from the evidence.
The major inference plaintiff wants the court to draw is that defendant Kane was "cutting the corner short" and ran into plaintiff who had just started to move forward from a stopped position at the stop sign. This claim is based on the position of defendant's vehicle, the position of the bicycle and the position of plaintiff as observed and testified to by parties who came upon the scene after the accident. The defendant's vehicle, according to this testimony, although still in the intersection, was pointed in the direction of plaintiff's lane of travel on Knapps Park Drive and was only four to five feet from the stop sign.
Plaintiff presented conflicting testimony as to the location of the bicycle and the location of plaintiff. Thomas Barrett placed the bicycle to the right of the passenger's side of defendant Kane's vehicle, some distance away in the intersection, and testified that he saw plaintiff being put on a stretcher from a location to the rear of defendant Kane's vehicle. Walter Targouski testified that, when he arrived on the scene, the bicycle was directly in front of defendant Kane's vehicle and the plaintiff was partly underneath the vehicle with his legs pointed toward the stop sign. CT Page 6926
Kane testified at his deposition: "Well, I just stood outside the vehicle, tried to calm down the person that was on the bicycle. He started moving. We held him down." (Page 7.) The use of the word "we" indicates that other persons had arrived on the accident scene.
As plaintiff has not proven the location where plaintiff originally landed, the court can draw no inferences as to point of impact from either of the locations testified to by the witnesses. Nor can the court draw any inferences as to the point of impact from the location of the bicycle. Plaintiff's witnesses testified as to two different locations. If both are believed, the only inference which can be drawn is that the bicycle was moved at least once. From the evidence, the court cannot determine whether the bicycle was moved from a location in front of the truck to a point to the right of the passenger's side of the truck or whether it was moved from that point to a position in front of the truck.
The witnesses were all consistent in testifying that Kane's vehicle was within the intersection when they arrived upon the accident scene. Whatever happened occurred within the intersection and not on Knapps Park Drive.
The physical evidence supports defendant's testimony that: ". . . out of nowhere came somebody on a bicycle and struck me headon, and that was that. It was pretty fast. There was no way to avoid it." The damage to the vehicle was the front windshield directly in front of the driver, the headlight on the driver's side, the middle of the car in the front and the front bumper. The biggest problem with plaintiff's case is that there is no evidence as to where in the intersection the collision actually took place. For whatever reason, neither attorney at the deposition seemed inclined to inquire into details of the accident. Defendant attributes the damage to his vehicle from the force with which plaintiff struck him after coming down the hill and through the stop sign. Plaintiff argues that the force was created by the defendant Kane's speed, yet at the same time he wants the court to infer that the point of impact is the point at which the witnesses saw Kane's vehicle after the accident (four to five feet from the stop sign).
The court cannot see how Kane could have been speeding and stopped instantaneously after hitting plaintiff. The momentum of the vehicle would have certainly carried him CT Page 6927 past the point of impact. Even under plaintiff's view of the post accident scene, it would seem more logical for any damage to Kane's vehicle to have been on the side rather than the front if he were indeed "cutting the corner short."
Plaintiff's case simply suffers from a lack of proof of any of the specifications of negligence in his complaint. The court had the benefit of the video taped deposition of defendant Kane. His testimony as to how the accident happened, although brief, was credible. He was making the left hand turn to go up the hill, at approximately five to eight miles per hour, when the plaintiff came out of nowhere, through the stop sign and into his vehicle. Plaintiff chose to only inquire on cross-examination as to whether he had seen the plaintiff before the impact and how fast he was traveling as he approached the intersection.
Knapps Farm Drive slopes down to Knapps Highway. The witnesses referred to it as a hill. Plaintiff asks the court to infer from plaintiff's testimony that, as he was in the habit of stopping at this stop sign and looking both ways, he stopped on the night of the accident. The better, more credible evidence leads the court to conclude that plaintiff came down the hill, went through the stop sign and crashed into the front of defendant Kane's vehicle.
Plaintiff has established none of his specifications of negligence by a fair preponderance of the evidence. In fact, the evidence shows plaintiff himself to be more than 50 per cent at fault and responsible for the collision. Therefore, judgment is entered for the defendant.
E. EUGENE SPEAR, JUDGE